2006 UT 60

**Gary Lee OLIVER, Plaintiff and Petitioner,**

v.

**STATE of Utah, Defendant and Respondent.**

**No. 20050090.**

Supreme Court of Utah.

Oct. 6, 2006.

Gary L. Oliver, pro se.

Mark L. Shurtleff, Att'y Gen., Christopher D. Ballard, Asst. Att'y Gen., Salt Lake City, for respondent.

NEHRING, Justice:

¶ 1 When he pleaded guilty to the murder of his wife, Gary Oliver disclosed to the sentencing court that he had taken some pills to help him sleep and cope with depression. He insisted, however, that he understood the meaning and consequences of his guilty plea. He later changed his mind and claimed that the medicine he had taken made him incapable of entering a knowing and voluntary plea and that he should be permitted to withdraw it. The sentencing court and the court of appeals rejected Mr. Oliver's claims.

¶ 2 We granted certiorari to determine whether the sentencing court adequately assessed Mr. Oliver's ability to enter a knowing and voluntary plea in light of his disclosure that he had taken pills to help him sleep and cope with depression. For the reasons we articulated in *State v. Beckstead,* 2006 UT 42, ¶¶ 18–21, 140 P.3d 1288, we conclude that the sentencing court's assessment was adequate and therefore affirm the court of appeals.

### FACTUAL AND PROCEDURAL HISTORY

¶ 3 On November 10, 1994, Mr. Oliver entered his guilty plea to murder. In the course of pleading guilty, Mr. Oliver signed an affidavit in which he stated, "I am not presently under the influence of any drug, medication or intoxicants which impair my judgment." Mr. Oliver's counsel also attested to his mental and physical competence.

The plea colloquy in which the sentencing court judge engaged Mr. Oliver and his counsel included the following exchange:

THE COURT: Are you presently under the influence of any alcohol or drugs of any kind?

MR. OLIVER: No, sir.

Q: Have you taken anything in the last twenty-four hours?

A: Only some pills over in the jail—telpolin—

Q: What is the—

A: To help me sleep.

MR. ATHAY: They affect your ability to think?

MR. OLIVER: I don't think so.

Q: They affect your ability to make decisions?

A: No.

Q: Do you understand what we're doing here today?

A: Yeah. Yeah.

Q: You and I have spoken about this plea on numerous occasions, have we not?

A: Uh-huh.

Q: And at any time have the pills affected your judgment in deciding whether to enter this plea?

A: No.

THE COURT: Do you feel like you were under the influence of these pills right now? You can understand what it is that I have told you?

MR. OLIVER: No, I understand. I understand.

Q: Do you have any questions about these proceedings so far, Mr. Oliver?

A: No.

MR. ATHAY: May I ask a couple of other questions?

THE COURT: Yes, uh-huh—

MR. ATHAY: They give you these to control mood swings that you have?

MR. OLIVER: I guess that's—I told them I couldn't sleep so they gave me that stuff. I was depressed.

Q: That been as a rule what occurred in this case?

A: Yeah.

Q: And the depression and lack of sleep not something you were concerned about prior to this event occur[r]ing?

A: No.

Q: And those pills were given to alter the moods that you had found yourself in; is that correct?

A: Yes.

¶ 4 The sentencing court accepted Mr. Oliver's plea and subsequently sentenced him to serve five years to life in the Utah State Prison. In 2002, Mr. Oliver filed a petition for post-conviction relief alleging, among other things, that he had consumed Nortriptaline, a psychotropic drug, shortly before entering his plea. He claimed that this drug rendered him unable to comprehend the plea proceedings, making his plea invalid under rule 11 of the Utah Rules of Criminal Procedure because it was not knowing and voluntary.

¶ 5 The post-conviction court dismissed the petition as untimely and also found that Mr. Oliver's rule 11 claim failed as a matter of law. The court of appeals affirmed.

## ANALYSIS

■ ¶ 6 When a defendant enters a guilty plea, the sentencing court engages in a "rule 11 colloquy" with the defendant in order to "establish that the defendant's guilty plea is truly knowing and voluntary and establish on the record that the defendant knowingly waived his or her constitutional rights." *State v. Visser*, 2000 UT 88, ¶ 11, 22 P.3d 1242 (internal quotation marks omitted). Therefore, the question we now face is what a sentencing judge must do to ensure that a plea is knowing and voluntary when the defendant has taken medicine to aid sleep and control moods.

■ ¶ 7 We begin with the principle that "[t]he use of narcotics does not *per se* render a defendant incompetent to stand trial, nor, presumably, to plead guilty." *Manley v. United States*, 396 F.2d 699, 700 n. 2 (5th Cir.1968) (emphasis in original) (citations omitted). It is, of course, the drug's effect and not the mere presence of the drug that matters. Thus, Mr. Oliver

would be entitled to vacation of his plea and conviction if he proved that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea.

*United States v. Malcolm,* 432 F.2d 809, 812 (2d Cir.1970).

¶ 8 The challenge posed by this case is to determine what a sentencing judge must do to ensure that the drug ingested by a defendant has not appreciably impaired his or her power to understand the meaning and consequences of admitting guilt. The difficulty of meeting this challenge is diminished substantially by our recent encounter in *State v. Beckstead,* 2006 UT 42, 140 P.3d 1288, with the same issue, albeit with a different drug— alcohol. There, we refused to require a judge taking a rule 11 plea from a defendant who had been drinking to follow any prescribed script in aid of ascertaining whether the alcohol had rendered the defendant incapable of entering a guilty plea. *Id.* ¶ 16. We outlined, however, several general principles to assist judges who are faced with the defendant's possible drug impairment in a plea hearing. First among these is the injunction that a sentencing judge pursue a meaningful engagement with a defendant during the plea colloquy. *Id.* ¶ 18. Such an engagement with a defendant may feature many different approaches to accomplishing the task of reaching a conclusion about a defendant's capability to enter a knowing and voluntary plea. The *Beckstead* principles are equally applicable here.

¶ 9 Just as we grant a great deal of deference for factual determinations at trial because of the fact finder's vantage point in relation to witnesses and evidence, we believe that in most instances sentencing judges can best determine how to ascertain whether a plea is knowing and voluntary based on the specific interactions they have with the defendant before them.

¶ 10 Mr. Oliver suggests that if it is known that a defendant has consumed a psychotropic drug, the court must hold a hearing and invite the introduction of expert testimo-

ny to determine the drug's effect on the defendant. We agree with Mr. Oliver's assertion that when the defendant confirms that he has recently taken a drug, the court must inquire further into the defendant's capacity. *See Miranda–Gonzalez v. United States,* 181 F.3d 164, 166 (1st Cir.1999). This requirement, however, does not sweep as broadly as Mr. Oliver would like it to. As with *Beckstead,* we refuse to mandate specific procedures. Instead, we focus on whether the methods employed by the sentencing court resulted in a meaningful engagement between the court and the defendant that allowed the court to make an informed decision.

¶ 11 "The critical question is whether the drugs—if they have a capacity to impair the defendant's ability to plea—have in fact done so on this occasion." *United States v. Savinon–Acosta,* 232 F.3d 265, 268 (1st Cir.2000). The court can make this determination most effectively by interacting with the defendant himself, by asking him questions concerning his mental state and ability to understand the procedures, and then weighing both the content of the responses offered as well as the demeanor and general coherence of the defendant that can be gleaned from his responses. In some instances, it may be beneficial for the court to ask specifically about the type and amount of drug consumed. But "[j]udges are not pharmacists or doctors," *id.,* so depending on the circumstance, that information may or may not be beneficial to the court. Therefore, we leave it up to the court's sound discretion to determine whether to pursue that line of inquiry.

¶ 12 Mr. Oliver argues that expert testimony is necessary to determine a defendant's capacity. We disagree. As with questions concerning the types and amount of drugs consumed, an expert may or may not be beneficial to the court. While experts will likely be capable of describing the general effect of a drug, that is no guarantee that the particular drug at issue had the particular effect on the defendant at the particular time that he was before the court. Such opinions would be of lesser importance than the actual

observations of the court concerning whether the defendant in this case, as opposed to people generally, is capable of making a knowing and voluntary plea.

¶ 13 In this instance, the sentencing court's investigation was sufficient to meet the standard outlined above. The court asked about the purpose of the drug, how it affected Mr. Oliver, and whether he understood the proceedings. Mr. Oliver's counsel, with the approval of the court, then asked more in-depth questions about why Mr. Oliver took the pills and their effect on him. Mr. Oliver's answers were all coherent, lucid, and directly responsive to the questions asked. This interaction satisfies the requirement that the court's decision be based upon meaningful engagement with the defendant. Furthermore, when asked repeatedly if he understood the proceedings or if the drugs affected his ability to understand, he consistently stated that he did understand and that the medication had in no way affected his ability to make a knowing and voluntary plea. While the defendant's own assurances of his capacity are not conclusive, "[c]ourts have commonly relied on the defendant's own assurance (and assurances from counsel) that the defendant's mind is clear." *Id.* at 269.

¶ 14 Our deference in this case is even greater than that allotted in *Beckstead*, 2006 UT 42, 140 P.3d 1288. While the presence of alcohol in a defendant's system can only decrease his ability to enter a knowing and voluntary plea, that is not necessarily the case with prescription medication. In most instances, including this one, when a mood-altering drug is given to a defendant by a physician, it is to improve the defendant's cognitive abilities. In other words, the fact that a defendant has undergone a medical evaluation and is receiving medication to treat a psychological infirmity is often evidence weighing in favor of a finding that the defendant is capable of entering a knowing and voluntary plea.

## CONCLUSION

¶ 15 We conclude that the sentencing court acted appropriately in establishing Mr. Oliver's ability to enter a guilty plea. If during such a plea, the sentencing court discovers that the defendant has taken psychotropic drugs, it must meaningfully engage the defendant in order to establish that the plea being entered is knowing and voluntary, but the court enjoys significant discretion in the method it will use to do so. Therefore, we affirm the judgment of the court of appeals.

¶ 16 Chief Justice Durham, Associate Chief Justice Wilkins, Justice Durrant, and Justice Parrish concur in Justice Nehring's opinion.