***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

Electronically Filed
Supreme Court
SCWC-11-0000089
04-JAN-2013
03:08 PM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

DENNIS KAULIA, Petitioner/Defendant-Appellant.

SCWC-11-0000089

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0000089; CR. NO. 3P7-09-01892)

January 4, 2013

RECKTENWALD, C.J., NAKAYAMA, ACOBA, MCKENNA, AND POLLACK, JJ.

AMENDED OPINION OF THE COURT BY POLLACK, J.

Petitioner Dennis Kaulia (Kaulia) was convicted by the District Court of the Third Circuit (district court) of committing assault in the third degree in the course of a mutual affray in violation of Hawai'i Revised Statutes (HRS) § 707-712 (1993).[1] We vacate the August 10, 2012 judgment of the

_____

[1] The district court orally rendered its verdict that Kaulia had committed the petty misdemeanor offense of assault in the third degree in the course of a mutual affray. However, the district court's Judgment of Conviction and Sentence, entered January 18, 2011, reflected that Kaulia was convicted of the misdemeanor offense of assault in the third degree. The

(continued...)

Intermediate Court of Appeals (ICA) and the district court's January 18, 2011 judgment of conviction and remand for a new trial for the reasons stated herein.

I.

On January 18, 2008, Kaulia was involved in an altercation with the complainant in the parking lot of a shopping center located in Kona, Hawai'i. The altercation also involved Kaulia's son and the complainant's wife and son. During the course of the scuffle, Kaulia shoved the complainant, attempted to punch him, and "backhanded" him in the mouth.

On October 22, 2009, Kaulia was charged by the State of Hawai'i (State) via Amended Complaint[2] with the misdemeanor offense of assault in the third degree in violation of HRS § 707-712(1)(a). Kaulia appeared in district court for arraignment and demanded a jury trial. The district court therefore committed

---

[1](...continued)
procedure taken in regard to "amending" the charge is discussed infra, Part III(B).

> HRS § 707-712 (1993) provides in relevant part as follows:
>
> (1) A person commits the offense of assault in the third degree if the person:
> (a) Intentionally, knowingly, or recklessly causes bodily injury to another person[.]
> (2) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

[2] The original Complaint, filed September 22, 2009, contained the incorrect date of the incident giving rise to the charge.

the case to the Circuit Court of the Third Circuit (circuit court).

On November 4, 2009, Kaulia appeared before the circuit court for Trial Setting.[3] Kaulia requested an attorney, and a public defender appeared for the proceeding. Kaulia submitted two documents to the court, one titled "Notice" and the other titled "Motion For Nolle Prosequi With Prejudice As to All Counts." The "Notice" document stated that Kaulia was a "foreign national to USA and State of Hawaii as a subject of the Kingdom of Hawaii." It also stated that he was "under medication known as Oxycontin one of the narcotic medication used to treat his extreme pain caused by history of neck and back injuries." Based on Kaulia's statements during the proceeding, the court decided to interpret the two documents as a motion to dismiss for lack of jurisdiction.[4]

Kaulia also orally informed the court that he was "under doctor's care" and visited a doctor in Honolulu once a month. The court told him that if his condition was such that he is "so uncomfortable that you cannot concentrate on this case," then he would have to bring in a doctor's note for a continuance

---

[3] The Honorable Elizabeth A. Strance presided over the proceedings in the circuit court.

[4] The circuit court did not orally rule on the motion at the hearing and the record on appeal does not reflect a subsequent ruling on this motion.

to be granted.  The court continued:

> I think if you are on OxyContin, that's a pretty strong pain medication.  And I would not want to have you participating in a case while you are under the influence of a strong narcotic. And so I need your direction on what your position is so that I can . . . set the appropriate hearings.

At the end of the hearing, the court was concerned that Kaulia looked "to be in physical pain," and directed the public defender, "So I would like to have addressed whether or not [Kaulia is] able to proceed at this time given the medication that he's on."  The record on appeal does not indicate whether any steps were taken after the hearing to determine whether Kaulia was able to proceed.

Subsequently on March 15, 2010, Kaulia filed a Motion to Dismiss Complaint (Motion to Dismiss) challenging the court's jurisdiction over the case based on the present existence of the Kingdom of Hawaiʻi (Kingdom).  At the hearing on the Motion to Dismiss, the court confirmed that in off-the-record conferences it had denied Kaulia's request for an evidentiary hearing to call witnesses, including one Dr. Keanu Sai, to establish the existence of the Kingdom.  The court then denied Kaulia's Motion to Dismiss.

On May 21, 2010, the State filed a "Motion to Amend Complaint and Remand" (Motion to Amend), requesting leave to amend the sole count of the Amended Complaint from assault in the

4

third degree, a misdemeanor offense, to assault in the third degree in the course of a mutual affray, a petty misdemeanor offense. The State attached a document titled "First Amended Complaint" as an exhibit to the Motion to Amend, which reflected the proposed amended charge of assault in the third degree in the course of a mutual affray. The memorandum in support of the Motion to Amend stated that pursuant to the State's "forthcoming First Amended Complaint," Kaulia was to be charged with a petty misdemeanor offense and therefore was not entitled to a jury trial. The State consequently moved to remand the case to district court.

The circuit court granted the State's Motion to Amend and ordered the case to be remanded to district court. Despite the court's order of remand, a First Amended Complaint was never filed in the district court or circuit court. The only document with a title of "First Amended Complaint" appearing in the record is the copy attached as an exhibit to the State's motion.

As ordered by the circuit court, Kaulia appeared for his bench trial before the district court on September 10, 2010.[5] He was represented by a court-appointed attorney. The bailiff had called the case and the prosecutor had just introduced

---

[5] The Honorable Joseph P. Florendo, Jr., presided over the proceedings.

herself when Kaulia interrupted.  He and the district court judge then engaged in a lengthy exchange in which Kaulia appeared to contest the court's jurisdiction.  After some time the court informed Kaulia that he was out of order.  Kaulia responded by informing the court that he was under medication:

> MR. KAULIA: I am also under medication, and you guys know this.
> THE COURT: You're under medication?
> MR. KAULIA: I put liens and class-action suit.  Not just me, but other sovereign groups.
> THE COURT: Okay, would you hold your comments for a while, Mr. Kaulia?  Please stop.

The court did not return to the issue of medication.  Rather, the court asked the prosecutor and defense counsel whether they were ready to proceed.  They responded affirmatively.  However, Kaulia interrupted again just after the court instructed the State to call its first witness.

Kaulia then announced his intention to leave the courtroom, and the court warned that the trial would be held without him:

> THE COURT: Okay.  Call your first witness, Ms. Walton.
> MR. KAULIA: You did not answer my question.
> MS. WALTON [PROSECUTOR]: Are we --
> MR. KAULIA: This is my tutu's land.  I told you --
> THE COURT: Mr. Kaulia, please have a seat.  Please have a seat.
> MR. KAULIA: I'm walking out.
> THE COURT: You're gonna walk out?  Okay, the record will reflect --
> MR. KAULIA: You have no authority on me.
> THE COURT: The record will reflect that Mr. Kaulia --
> MR. KAULIA: -- and a lien on you.

THE COURT: -- is walking out towards the door.  If you leave, we're going to continue this trial without you --
MR. KAULIA: You threw me out of the court the last time my wife came.
THE COURT: I'm not gonna throw you out --
MR. KAULIA: Write this down.  I want the transcripts.
THE COURT: If you want to walk out --
MR. KAULIA: You guys fraudulently abuse me and my name. Yeah?  I can walk out and you can do nothing.
THE COURT: True, I won't do anything.
MR. KAULIA: I know you won't.
THE COURT: I'll continue the --
MR. KAULIA: And then I'll probably just take away that lien and the class-action --
THE COURT: I'll hold this trial without you --
MR. KAULIA: -- you and the rest of the judges here.  Because your head of state is Governor Linda Lingle.  She's a fraud, a puppet, connected to the corporation, who is Barack Obama. And who runs Barack Obama?  I know.  You know.  The admiralty court is right in between.

(Emphases added).

The exchange continued until Kaulia eventually walked out of the courtroom:

THE COURT: Excuse me, Mr. Kaulia.  Please be quiet.  If you want to walk out, you can walk out.  We're going to go ahead and have this trial without you.
MR. KAULIA: And then what, I get a bench warrant, like my cousin Lindsey Lindsey?
THE COURT: I'm not going to issue a --
MR. KAULIA: -- and remanding the man?
THE COURT: -- but we'll go ahead and have the trial without you.
MR. KAULIA: Justice will be served.  Alright?  We have short time here in this life.
On the other side, that bad spirit that I see next to you, you gonna end up with him.
THE COURT: So, Mr. Kaulia, please be quiet.
MR. KAULIA: I am gone.
THE COURT: We'll note that Mr. Kaulia is walking --
MR. KAULIA: You have no authority on the sovereign people. These flags don't have authority.  This is the flag.
THE COURT: If you want to be in court, you have to keep in order, and I'm going to ask you --
MR. KAULIA: I want you to answer me.  I'm sick and tired of you forcing me here, threatening me, oppressing me.  Held me under extreme duress.
THE COURT: Mr. Kaulia, if you don't stop talking and be quiet, I'm going to find you in contempt of court.

7

> MR. KAULIA: That's what happen to Fujino. And you know what happened? I won at Ibarra's court. I didn't even have to go to court. And I have class-action suit --
> THE COURT: This is the last time I'm going to ask you, Mr. Kaulia.
> We'll note that Mr. Kaulia has walked out. And pursuant to Rule 43, I think we can go ahead without his presence.

(Emphases added).

After Kaulia departed the courtroom, the prosecutor immediately requested that Kaulia be arrested for summary contempt. Defense counsel objected to the request and to proceeding without Kaulia. The court declined to have Kaulia arrested, but invoked Hawaiʻi Rules of Penal Procedure (HRPP) Rule 43 in deciding to proceed with the trial without him.[6] When defense counsel asked to address the Rule 43 issue, the court responded, "Well, you might want to try to get your client back

---

[6] Rule 43. Presence of the defendant.

> (a) *Presence required*. The defendant shall be present at the arraignment, at the time of the plea, at evidentiary pretrial hearings, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
> (b) *Continued presence not required*. The further progress of a pretrial evidentiary hearing or of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,
> (1) is voluntarily absent after the hearing or trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial); or
> (2) engages in conduct which is such as to justify exclusion from the courtroom.

HRPP Rule 43 (2008).

8

in here, if you want."  The prosecutor interjected and requested a recess because she was "concerned about the [identification] issue if he's not here.  Identifying the defendant."  The court granted the recess.

After the recess, defense counsel again objected that Kaulia was constitutionally required to be present for his trial.  The defense argued that Kaulia was not "voluntarily absent" within the meaning of Rule 43 but was "continuing to assert his position with regard to lack of jurisdiction."

In addition, defense counsel noted that he had spoken to Kaulia that morning and that he had not been "sure what was going to transpire."  The defense reminded the court that Kaulia had mentioned he was under medication:  "However, on the record he did indicate that he was under medication, and I don't know if that is an issue with regard to his statements.  I'm not saying that he's saying it is.  I'm just not sure."  The court overruled the objection, reasoning, "Well, he walked out.  If that's not being voluntarily absent from the hearing, I don't know what is."

The court then proceeded with the trial and the State called its first witness, the complainant.  Before the complainant was sworn in, defense counsel interjected to state additional bases for his objection to proceeding without Kaulia.

9

He objected on the basis that the Sixth Amendment requires effective assistance of counsel and that without Kaulia present he would not be able to conduct effective cross-examination. He also objected on the ground that Kaulia had not been "advised of his right to Tachibana before we proceeded, and therefore his constitutional rights have been adversely affected."[7] The court overruled the objection, stating, "I think by his actions, he's waived his right to receive those admonishments; and he's, by his actions, asserted his right to remain silent."

The State then proceeded with its case-in-chief. In addition to the complainant, the State called the complainant's son, the complainant's wife, and Hawaiʻi County Police Officer Joslyn Kabalis (Officer Kabalis) as witnesses.

The prosecutor approached the identification issue by asking the complainant, the complainant's son, and Officer Kabalis whether they had seen the person who walked out of the courtroom that morning. They answered affirmatively. In this manner, the prosecutor obtained a court ruling that the record would reflect the identification of the defendant by the complainant's son and Officer Kabalis.

---

[7] Defense counsel's statement regarding Kaulia's "right to Tachibana" refers to Tachibana v. State, 79 Hawaiʻi 226, 900 P.2d 1293 (1995) (requiring trial courts to engage the defendant in a colloquy regarding the defendant's right to testify).

The witnesses testified to the following facts regarding the altercation that gave rise to Kaulia's charge.

The complainant's son and Kaulia's son were casual acquaintances. The altercation was related to a prior failed arrangement for the complainant's son to fix Kaulia's truck. The incident took place in the parking lot of a shopping center located in Kona, Hawaiʻi. The complainant and his son were sitting in their truck in the parking lot while the complainant's wife went to the bank located at the center. They recognized Kaulia's son, who walked in front of the truck while "eyeing" them. Kaulia's son walked to Kaulia's truck that was parked a few stalls away and spoke to Kaulia, who was sitting inside. Kaulia and his son reversed their truck and parked directly behind the complainant's vehicle, and they both stepped out. The complainant's son got out of the complainant's truck, Kaulia and his son approached, and a scuffle ensued between the three men.

The complainant testified that at that point, "I got out [of the truck] and I tried to break 'em up, and he [Kaulia] shoved me. As an automatic reflex, I shoved him back." The complainant claimed that he was trying to tell Kaulia to stop, but "he kept holding his fist up to me." Kaulia then attempted to punch him but missed. The complainant responded by punching Kaulia: "He threw and I sidestepped him, and I hit him in the

11

neck and he went down." At the same time, the complainant slipped on the curb and fell.

The complainant testified that later during the incident, Kaulia "backhanded" him in the mouth. Kaulia then ran to his truck and appeared to be reaching into the back of the truck. The complainant's son went over and punched Kaulia. Kaulia and his son then got in their truck and left.

Officer Kabalis testified that she responded to a call about the incident and interviewed the complainant and his family at the scene. While there, she received a call about a person waiting at the police station. She completed her investigation and returned to the station, where she spoke to Kaulia. Kaulia told her that he and his son had been involved in a dispute at the bank, where they had gone to withdraw money. As Kaulia's son was getting out of their vehicle, he noticed the complainant and his son sitting in their truck. When Kaulia's son returned after withdrawing money, he told Kaulia that it seemed like the complainant and his son were trying to "call him out for a fight." Officer Kabalis testified that according to Kaulia, "the boys got into a fight by mutual agreement."

After the State rested, defense counsel stated that he would like to call Kaulia to testify. The court responded, "Well, he's not here. Do you want to call him to come to court?"

Defense counsel declined, reasoning, "Well, this is the trial, your Honor, and so had Mr. Kaulia been here, I would call him. But he's not here, and he was not given a Tachibana instruction. So, as an officer of the court, I'm required to rest my case."

The district court orally rendered its verdict that Kaulia had committed the offense of assault in the third degree in the course of a mutual affray, as alleged in the "First Amended Complaint."[8]  The court sentenced Kaulia to a one-year term of probation, subject to the condition that he serve thirty days imprisonment.[9]

On appeal to the ICA, Kaulia challenged the district court's jurisdiction; its violation of his constitutional rights to due process and confrontation by holding the trial *in abstentia*; the circuit court's preclusion of Dr. Sai's testimony in support of Kaulia's Motion to Dismiss; the sufficiency of the evidence supporting his conviction; and his sentence to a term of probation of one year.

---

[8]  The district court's Judgment of Conviction and Sentence was entered on January 18, 2011.  The Judgment reflects that Kaulia was convicted of the misdemeanor offense of assault in the third degree in violation of HRS § 707-712(1)(a) rather than the petty misdemeanor offense of assault in the third degree in the course of a mutual affray.

[9]  The court also ordered Kaulia to pay restitution of $425.48 to the complainant, $130 in fees, and to submit a written letter of apology to the complainant.

The ICA held that Kaulia's claim of lack of jurisdiction was without merit because of the territorial applicability of the state's criminal jurisdiction, and that the circuit court did not err in precluding Dr. Sai's testimony.[10] Summary Disposition Order (SDO) at 2-3. The ICA ruled that the district court did not violate Kaulia's constitutional rights to due process and confrontation by holding the trial *in abstentia* because "Kaulia waived those rights by voluntarily walking out of the courtroom after his case had been called for trial and after the District Court warned Kaulia that if he left, the trial would be held in his absence." Id. at 3. Additionally, the ICA held that there was sufficient evidence to negate Kaulia's claim of self-defense. Id. at 4.

The ICA affirmed Kaulia's conviction but vacated the district court's Judgment of Conviction and Sentence with respect to the sentence imposed and remanded the case for re-sentencing.[11] Id. In his application for writ of certiorari

---

[10] The Honorable Craig H. Nakamura, Chief Judge, the Honorable Daniel R. Foley, and the Honorable Lawrence M. Reifurth, presiding.

[11] The ICA held that the district court erred in sentencing Kaulia to a one year term of probation subject to the condition that he serve thirty days of incarceration. Under HRS § 706-623(1)(d) (Supp. 2010), the maximum authorized term of probation for a petty misdemeanor conviction was six months, "provided that up to one year may be imposed upon a finding of good cause." Under HRS § 706-624(2)(a) (Supp. 2010), imprisonment not exceeding five days could be imposed as a condition of probation. The district court erred by not making the predicate finding of good cause when it imposed a one

(continued...)

(Application) to this court, Kaulia argues that the ICA gravely erred in all respects in its rulings except for its holding on sentencing.

II.

Kaulia contends that the courts of the State of Hawai'i lacked subject matter jurisdiction over his criminal prosecution because the defense proved the existence of the Hawaiian Kingdom and the illegitimacy of the State of Hawai'i government.

Pursuant to HRS § 701-106 (1993),[12] "the [S]tate's criminal jurisdiction encompasses all areas within the territorial boundaries of the State of Hawai'i."  State v. Jim, 105 Hawai'i 319, 330, 97 P.3d 395, 406 (App. 2004).  The State charged Kaulia based on his conduct in Kona, County and State of Hawai'i.  Thus Kaulia is subject to the State's criminal jurisdiction in this case.

---

[11](...continued)
year term of probation and by exceeding the five day limit on the term of imprisonment imposed as a condition of probation.

[12]   HRS § 701-106 (1993) provides in relevant part:

>     (1) Except as otherwise provided in this section, a person may be convicted under the law of this State of an offense committed by the person's own conduct or the conduct of another for which the person is legally accountable if:
>        (a) Either the conduct or the result which is an element of the offense occurs within this State[.]
>     . . . .
>     (5) This State includes the land and water and the air space about the land and water with respect to which the State has legislative jurisdiction.

15

Kaulia appears to argue that he is immune from the court's jurisdiction because of the legitimacy of the Kingdom government. In that regard, we reaffirm that "[w]hatever may be said regarding the lawfulness" of its origins, "the State of Hawaiʻi . . . is now, a lawful government." State v. Fergerstrom, 106 Hawaiʻi 43, 55, 101 P.3d 652, 664 (App. 2004), aff'd, 106 Hawaiʻi 41, 101 P.3d 225 (2004). Individuals claiming to be citizens of the Kingdom and not of the State are not exempt from application of the State's laws. See id. at 55, 101 P.3d at 664; State v. Lorenzo, 77 Hawaiʻi 219, 883 P.2d 641 (App. 1994); State v. French, 77 Hawaiʻi 222, 883 P.2d 644 (App. 1994); Nishitani v. Baker, 82 Hawaiʻi 291, 921 P.2d 1182 (App. 1996); State v. Lee, 90 Hawaiʻi 130, 976 P.2d 444 (1999).

Thus we also reject Kaulia's argument that the circuit court erred in precluding Kaulia from calling a witness to present evidence concerning the existence of the Kingdom in support of his Motion to Dismiss.

III.

Kaulia maintains that the district court violated his rights to due process and confrontation by holding the trial in his absence.

"The due process guarantee of the . . . Hawaii constitution[] serves to protect the right of an accused in a

16

criminal case to a fundamentally fair trial."[13]  State v.

Matafeo, 71 Haw. 183, 185, 787 P.2d 671, 672 (1990).  "Central to

the protections of due process is the right to be accorded a

meaningful opportunity to present a complete defense."  Id.

(internal quotation marks and citations omitted).

### A.

In this case, just before Kaulia exercised his right to

trial, he informed the court that he was taking medication:

> THE COURT:  Okay.  Mr. Kaulia, you're out of order, so I'm
> going to ask you to keep silent for --
> MR. KAULIA:  I am also under medication, and you guys know
> this.
> THE COURT:  You're under medication?
> MR. KAULIA:  I put liens and class-action suit.  Not just me,
> but other sovereign groups.
> THE COURT:  Okay, would you hold your comments for a while,
> Mr. Kaulia?  Please stop.
> Is the State ready to proceed?

(Emphases added).

After Kaulia left the courtroom, his attorney objected

to the court proceeding without Kaulia and again sought to bring

the court's attention to the issue of Kaulia's medication.  The

court overruled the objection without addressing the issue of

Kaulia's medication:

---

[13]  HAW. CONST. art. I, § 5 provides:

> No person shall be deprived of life, liberty or property
> without due process of law, nor be denied the equal protection
> of the laws, nor be denied the enjoyment of the person's civil
> rights or be discriminated against in the exercise thereof
> because of race, religion, sex or ancestry.

17

> [DEFENSE COUNSEL]: In addition, I did have a brief opportunity to speak to Mr. Kaulia this morning. I wasn't sure what was going to transpire. <u>However, on the record he did indicate that he was under medication, and I don't know if that is an issue with regard to his statements.</u> I'm not saying that he's saying it is. I'm just not sure. So I'll just state that on the record.
> THE COURT: Well, he walked out. If that's not being voluntarily absent from the hearing, I don't know what is. So I'll overrule your objection.

(Emphasis added).

The district court did not inquire as to the name or type of medication Kaulia was taking, or establish whether the medication had any effect on Kaulia's ability to meaningfully participate in his trial and present his defense. From this record it cannot be determined whether Kaulia was still taking OxyContin, as he had indicated during the circuit court proceedings,[14] or some other medication.

### 1.

When Kaulia informed the district court that he was taking medication, he was about to exercise his constitutional right to trial. In this regard, cases concerning the waiver of the right to trial through a guilty plea are instructive, as "[a] defendant who stands trial is likely to be presented with choices that entail relinquishment of the same rights that are

---

[14] As discussed *supra* Part I, Kaulia informed the circuit court during the trial setting hearing that he was taking Oxycontin, a "narcotic medication used to treat his extreme pain caused by [a] history of neck and back injuries," and that he visited a doctor in Honolulu once a month.

relinquished by a defendant who pleads guilty." Godinez v.

Moran, 509 U.S. 389, 398 (1993). The Godinez Court explained,

> [The defendant who stands trial] will ordinarily have to decide whether to waive his privilege against compulsory self-incrimination by taking the witness stand; if the option is available, he may have to decide whether to waive his right to trial by jury; and, in consultation with counsel, he may have to decide whether to waive his right to confront his accusers by declining to cross-examine witnesses for the prosecution.

Id. (internal quotation marks, citations and brackets omitted).

Additionally, the defendant who stands trial will have

to make several "strategic choices" throughout the proceeding.

Id. "In consultation with his attorney, he may be called upon to

decide, among other things, whether (and how) to put on a defense

and whether to raise one or more affirmative defenses." Id.

Thus, the Court in Godinez concluded that "while the decision to

plead guilty is undeniably a profound one, it is no more

complicated than the sum total of decisions that a defendant may

be called upon to make during the course of a trial." Id.

State and federal courts have required in the context

of guilty pleas that trial courts conduct a sufficient inquiry

into the effect of any medication on the defendant's capacity to

knowingly and voluntarily enter the plea.[15]

---

[15] "The purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." Godinez v. Moran, 509 U.S. 389, 401 n.12 (1993) (explaining that by contrast, the "focus of a competency inquiry is the defendant's mental capacity; . . . whether he has the *ability* to understand the proceedings").

The Utah Supreme Court held that when "the sentencing court discovers that the defendant has taken psychotropic drugs, it must meaningfully engage the defendant in order to establish" that the defendant is entering a plea knowingly and voluntarily. Oliver v. State, 147 P.3d 410, 414 (Utah 2006). Concerned with determining "what a sentencing judge must do to ensure that the drug ingested by a defendant has not appreciably impaired his or her power to understand the meaning and consequences of admitting guilt[,]" the court found that the sentencing court's "meaningful engagement" with the defendant would "allow[] the court to make an informed decision" regarding the defendant's capacity to enter a plea. Id. at 413.

Although it declined to "mandate specific procedures" for the inquiry,[16] the Oliver court explained that the most effective means of determining whether any medication has impaired the defendant's ability to plead would be by "interacting with the defendant himself, by asking him questions concerning his mental state and ability to understand the procedures, and then weighing both the content of the responses offered as well as the demeanor and general coherence that can be gleaned from his responses." Id.

---

[16] The court recognized that "[i]n some instances, it may be beneficial for the court to ask specifically about the type and amount of drug consumed," but declined to require such an inquiry in every case. Oliver, 147 P.3d at 413.

In <u>Oliver</u>, the defendant informed the sentencing court during its plea colloquy that he was taking "pills to help him sleep and cope with depression." <u>Id.</u> at 411. The Utah Supreme Court found that the sentencing court sufficiently inquired into the defendant's medication, where "the court asked about the purpose of the drug, how it affected [the defendant], and whether he understood the proceedings." <u>Id.</u> at 414. Additionally, the defendant's responses were "all coherent, lucid, and directly responsive . . . ." <u>Id.</u>

Similarly, the Ohio Supreme Court stated that "[a]dditional inquiry is necessary into a defendant's mental state once a defendant seeking to enter a guilty plea has stated that he is under the influence of drugs or medication." <u>State v. Mink</u>, 805 N.E.2d 1064, 1076 (Ohio 2004). Applying this standard, the court held that the trial court properly accepted the defendant's guilty plea, where the trial court, after learning that the defendant was taking an anti-depressant medication, "obtained assurance from [the defendant] . . . that the medication had no effect on his ability to understand the court's proceedings." <u>Id.</u> at 1077.

Federal courts employ similar procedures when the defendant indicates during a plea colloquy that he or she is

taking medication.[17]  In <u>United States v. Cole</u>, the Third Circuit held that it could not affirm the trial court's finding that the defendant was competent to plead guilty due to the trial court's "failure to pursue the issue of [the defendant's] state of mind through further questioning" once the trial court was informed of the defendant's recent drug use during the plea colloquy.  813 F.2d 43, 46 (3d Cir. 1987).

The First Circuit in <u>United States v. Parra-Ibanez</u> remanded the case for an evidentiary hearing to determine whether the defendant's medication had affected his competency to voluntarily plead guilty, where the defendant had informed the trial court that he had recently taken prescription medications. 936 F.2d 588, 594-96, 598 (1st Cir. 1991).  Although the trial court asked further questions to elicit the defendant's assurance that he understood the proceedings, it failed to inquire about what dosages of the medication the defendant had ingested and "what effects, if any, such medications might be likely to have on [defendant's] clear-headedness."  <u>Id.</u> at 595-96.  The First Circuit held, like the Third Circuit, that the judge was

---

[17]  The courts in these federal cases reviewed whether the trial court's plea colloquy complied with Rule 11 of the Federal Rules of Criminal Procedure, which requires the trial court to "address the defendant personally in open court and determine that the plea is voluntary" before accepting a plea of guilty or nolo contendere.  FED. R. CRIM. P. 11(b)(2).  Rule 11 does not specifically require federal courts to inquire about medication.

obligated to inquire further in that situation.  Id. at 596.  See also United States v. Damon, 191 F.3d 561, 563-66 (4th Cir. 1999) (remanded for determination of voluntariness of guilty plea, where district court inquired about the nature of the drug but failed to determine whether the medication had any effect on the defendant's ability to enter a plea); United States v. Dalman, 994 F.2d 537, 538-39 (8th Cir. 1993) (defendant's guilty plea valid where the court inquired whether defendant's unspecified medication affected his understanding of the proceedings and there was no indication in the record that the defendant "was not fully in possession of his faculties during the proceedings").

3.

The focus of the trial court's inquiry for purposes of the defendant's guilty plea is the effect of the medication on the defendant's ability to knowingly and voluntarily enter the plea.[18]  See Oliver v. State, 147 P.3d 410, 412 (Utah 2006) ("It is, of course, the drug's effect and not the mere presence of the

---

[18]  See Froistad v. State, 641 N.W.2d 86 (N.D. 2002) (court's inquiry into defendant's use of prescription medication was sufficient where court confirmed that the medication had no effect on defendant's "thinking faculties" and there was no indication that defendant was "confused or unaware of what was taking place during the proceeding"); People v. Williamson, 301 A.D.2d 860 (N.Y. App. Div. 2003) (holding that defendant's guilty plea was knowing, voluntary and intelligent, where trial court fully explored defendant's use of anti-depressant medication and ascertained that defendant was not affected by medication); Weeks v. State, 341 S.W.3d 701 (Mo. Ct. App. 2011) (defendant's guilty plea was valid where defendant was questioned thoroughly about any effects of defendant's medications on his ability to understand the consequences of his pleas).

drug that matters" for purposes of the defendant's competency to plead guilty). Similarly, given the difficult decisions that a defendant who stands trial is called upon to make, when the trial court becomes aware during the course of a trial proceeding that the defendant has recently ingested medication, the court should determine the effect of the medication on the defendant's participation in the trial. The best way for the trial court to determine the effect of any medication on the defendant is to undertake a "meaningful engagement" with the defendant in order to allow the court to make an informed decision as to the defendant's ability to proceed with trial. See id. at 413.

In this case, the district court did not inquire into the possible effects of any medication on Kaulia. However, in light of our resolution of other issues in this case, we need not determine whether the district court's failure to inquire affected Kaulia's due process right to a fair trial. In the event of a retrial following remand, if issues of medication arise, the court should address such issues in a manner that enables the court to make an informed determination as to Kaulia's ability to meaningfully participate in his trial.

B.

Kaulia was charged with the misdemeanor offense of assault in the third degree, which carries a maximum prison term

24

of one year.  HRS § 707-712(2); HRS § 706-663 (1993).[19]  He

therefore had a constitutional and statutory right to a trial by

jury.  HRS § 806-60 (1993) (any defendant charged with a crime

for which the defendant may be imprisoned for six months or more

has the right to trial by jury); State v. Kasprzycki, 64 Haw.

374, 375, 641 P.2d 978, 978-79 (1992) (defendants do not have a

constitutional right to jury trial for "petty" crimes with a

maximum penalty of thirty days imprisonment and a fine).

Pursuant to HRS § 604-8(a) (Supp. 2010), in any case in

which the defendant has "the right to a trial by jury in the

first instance, the district court, upon demand by the accused

for a trial by jury, shall not exercise jurisdiction over the

case, but shall examine and discharge or commit for trial the

accused as provided by law[.]"

In this case, Kaulia demanded a jury trial and the

district court therefore committed the case to circuit court.

Subsequently the State filed a motion for leave to amend the sole

---

[19]    HRS § 706-663 (1993) provides:

> After consideration of the factors set forth in sections 706-
> 606 [factors to be considered in imposing a sentence] and 706-
> 621 [factors to be considered in imposing a term of
> probation], the court may sentence a person who has been
> convicted of a misdemeanor or a petty misdemeanor to
> imprisonment for a definite term to be fixed by the court and
> not to exceed one year in the case of a misdemeanor or thirty
> days in the case of a petty misdemeanor.

(Emphasis added).

count of the Amended Complaint from a misdemeanor to a petty misdemeanor and to remand the case to district court.[20] The proposed amendment was reflected in an exhibit titled "First Amended Complaint," attached to the motion. The circuit court granted the State's motion, the case was remanded to district court, and Kaulia was accordingly ordered by the circuit court to appear in district court.

However, a "First Amended Complaint" was never filed in the district court.[21] As a result, the Amended Complaint alleging the misdemeanor charge remained the governing pleading.[22] Thus, Kaulia's prior demand for a jury trial as to the misdemeanor charge also remained operative, as Kaulia's right to jury trial was extinguished by the State only upon the condition subsequent of amending the charge to a petty misdemeanor. Although the circuit court's order remanded the case to the district court, the district court could not properly

---

[20] The proposed amended charge of assault in the third degree in the course of a mutual affray carried a maximum penalty of thirty days imprisonment. HRS § 706-663. Therefore Kaulia would not have had a right to jury trial to defend against this charge, and the case could properly have been tried by the district court.

[21] The district court's Judgment reflects the original charge as "ASSAULT 3, HRS § 707-712(1)(A)," and the final charge as "SAME."

[22] HRPP Rule 7(a) (2008) provides that the "charge against a defendant is an indictment, an information, or a complaint filed in court[.]" (Emphasis added). HRPP Rule 7(h) (2008) provides, "A complaint may be filed in either the district court or circuit court; provided that a complaint shall not be filed initially in the circuit court when it charges . . . only an offense or offenses other than a felony."

proceed with Kaulia's bench trial unless the First Amended Complaint was filed, the charge was amended,[23] or Kaulia waived his right to jury trial. None of these events occurred prior to Kaulia's departure from the courtroom.

Kaulia did not expressly waive his right to jury trial either in writing or orally in open court. See HRPP Rule 5(b)(3) (2008) ("In appropriate cases, the defendant shall be tried by jury in the circuit court unless the defendant waives in writing or orally in open court the right to trial by jury"). On the contrary, Kaulia had demanded his right to jury trial, and his departure from the courtroom did not operate as an implied waiver of this right. See State v. Young, 73 Haw. 217, 220, 830 P.2d 512, 514 (1992) ("waiver of the right to a trial by jury cannot be presumed by a silent record"); State v. Swain, 61 Haw. 173, 175, 599 P.2d 282, 284 (1979) (per curiam) (holding that defense counsel indicating they were "ready to go to trial" did not support the conclusion that the defendant knowingly and voluntarily waived the right to jury trial).

Because the charge against Kaulia was not amended to a petty misdemeanor and Kaulia had demanded his right to jury trial prior to leaving the courtroom, the district court lacked

---

[23] See HRPP Rule 7(f)(1) (2008) ("The court may permit a charge other than an indictment to be amended at any time before trial commences if substantial rights of the defendant are not prejudiced.").

jurisdiction to proceed to trial. Kaulia's conviction for assault in the third degree in the course of a mutual affray is accordingly vacated and the case is remanded for a new trial.

C.

Although the foregoing conclusion requires that Kaulia's conviction be vacated, we address Kaulia's argument that the district court violated his constitutional rights to due process and confrontation by holding the trial *in abstentia* in the event that similar circumstances occur on remand.

Kaulia argues that the district "court did not obtain an intelligent and voluntary waiver of his right to be present" before he left the courtroom. He explains that "[t]he court failed to advise [him] of any of the significant constitutional rights that he would be waiving if he left the courtroom and the proceedings were held in his absence, such as his right to confront his accusers, to assist in his defense and testify."

The ICA rejected Kaulia's argument, holding that the district court did not violate Kaulia's rights to due process and confrontation because "Kaulia waived those rights by voluntarily walking out of the courtroom after his case had been called for trial and after the District Court warned Kaulia that if he left, the trial would be held in his absence." SDO at 3.

28

1.

HRPP Rule 43(a) codifies the constitutional requirement of the defendant's presence at trial.[24]  State v. Caraballo, 62 Haw. 309, 320, 615 P.2d 91, 99 (1980).  HRPP Rule 43(b)(1) provides that a defendant "shall be considered to have waived the right to be present whenever a defendant, initially present, is voluntarily absent after the hearing or trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial)."

At the outset, we note that Rule 43(b)(1) only allows trials to be held *in abstentia* where the defendant was present when the trial commenced but voluntarily absents himself thereafter.  Assuming, without deciding, that Kaulia's bench trial had in fact commenced at the time Kaulia departed the courtroom,[25] when a defendant who is present in the courtroom

---

[24]  See supra note 6.

[25]  The ICA and district court applied Rule 43(b)(1) without stating at what point the trial had commenced.  At the time Kaulia left the courtroom, Kaulia had not been advised of his right to testify pursuant to Tachibana v. State, 79 Hawaiʻi 226, 237 n.9, 900 P.2d 1293, 1304 n.9 (1995) (colloquy should be conducted once prior to commencement of trial), the parties had not given or waived opening statements, and the State's first witness had not been called to testify by the prosecutor.  Furthermore, the prosecutor requested a recess immediately after Kaulia departed the courtroom because she was "concerned about the [identification] issue if [Kaulia is] not here."  After the recess there was no further discussion of the identification issue but on direct examination, the prosecutor elicited identifications of the defendant from the State's witnesses who stated that they had seen and recognized the person who walked out of the courtroom that morning.
     Although courts have not definitively established when a non-jury trial "commences" for purposes of Rule 43, courts have defined commencement as

(continued...)

announces an intention to leave, the trial court should, whenever possible, inform the defendant of the significant constitutional rights the defendant will be giving up by leaving the courtroom.

A defendant charged with a criminal offense has a well-established right to be present at "each critical stage of the criminal proceeding."  Onaka v. Onaka, 112 Hawaiʻi 374, 380, 146 P.3d 89, 95 (2006).  This right is "of no less than constitutional magnitude, and is founded upon the Confrontation and Due Process clauses of both the United States and Hawaiʻi Constitutions."  State v. Walsh, 125 Hawaiʻi 271, 285, 260 P.3d 350, 364 (2011) (quoting State v. Okumura, 58 Haw. 425, 427, 570 P.2d 848, 851 (1977)) (internal quotation marks omitted).

---

[25](...continued)
the point when some substantive or meaningful event has occurred.  See Commonwealth v. Dowling, 959 A.2d 910, 915 (Pa. 2008) (generally, "commencement of trial should be marked by a substantive, rather than pro forma, event," defined as "when a court has begun to hear motions which have been reserved for the time of trial; when oral arguments have commenced; or when some other such substantive first step in the trial has begun") (internal quotation marks omitted) (emphasis added); Commonwealth v. Lamonna, 373 A.2d 1355, 1358 (Pa. 1977).

By this and other measures, Kaulia's trial may not have commenced when he left the courtroom, where the only events that had occurred were the calling of the case, the parties indicating that they were "ready" to proceed, and the court directing the State to call its first witness.  See also HRPP Rule 24.1(a) (2000) (describing the "conduct" of a trial as the sequence of presentation of the opening statements, prosecutor's case in chief, defense's case, rebuttal evidence, and closing arguments).  But cf. Johnson v. State, 604 S.W.2d 927, 928-29 (Ark. 1980) (without establishing at what point trial commenced, court held it was not clearly erroneous to hold that bench trial had "commenced" where the trial court called the case, discovered a pending motion to suppress evidence, took testimony on the motion, and then recessed).

However, we need not resolve whether Kaulia's bench trial had commenced when he departed the courtroom because the issue was not raised on appeal to the ICA or in the Application.

The right of presence is "scarcely less important . . . than the right of trial itself." Diaz v. United States, 223 U.S. 442, 455 (1912). The absent defendant is not only waiving the right to be present during the trial. The absent defendant is also waiving the Sixth Amendment right to confront and cross-examine witnesses and the right to testify in his or her own defense. Commonwealth v. Vega, 719 A.2d 227, 230-31 (Pa. 1998). Furthermore, even if the defendant is represented by counsel who remains in the courtroom, "any challenge to a defendant's Sixth Amendment right to effective counsel is limited since a defendant who waives his right to be present during trial is unavailable to aid counsel in his representation, and cannot later claim counsel's trial strategy unreasonable." Id. at 231.

Thus when Kaulia announced an intention to leave the courtroom by saying, "I'm walking out," this was the factual equivalent of Kaulia announcing an intention to waive not only his constitutional right to be present, but also his right to confront witnesses, his right to testify in his own defense, and his right to assist his counsel in defending against the charge.[26]

Despite the fact that Kaulia relinquished these fundamental constitutional rights by leaving the courtroom, when

---

[26] After the State rested, Kaulia's attorney informed the district court that he would have called Kaulia to testify if Kaulia had been present.

Kaulia informed the court, "I'm walking out," and then continued speaking to the court, the court's only warning in response was "If you want to walk out, you can walk out.  We're going to go ahead and have this trial without you."  There is no indication in the record of whether Kaulia was aware that by leaving the courtroom, he was effectively giving up his constitutional right to be present at trial, to testify in his own defense, to confront the witnesses against him, and to assist his counsel in presenting his defense.

2.

Hawai'i courts have consistently recognized that the best way to ensure a defendant's constitutional rights are protected is for the defendant to be informed of the nature of the right and the consequences of waiving that right.  See Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995).  This recognition has led to the requirement that trial courts in Hawai'i engage in on-the-record colloquies with defendants when the waiver of certain fundamental rights are at issue. Colloquies are required for a defendant's waiver of the right to testify (Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995)), the right to trial by jury (State v. Ibuos, 75 Haw. 118, 857 P.2d 576 (1993)), the right to have guilt proved beyond a reasonable doubt (i.e. entry of guilty plea) (State v. Vaitogi,

32

59 Haw. 592, 585 P.2d 1259 (1978)), and the right to counsel (State v. Vares, 71 Haw. 617, 801 P.2d 555 (1990) (abrogated on other grounds by Nichols v. United States, 511 U.S. 738, 742 n.7 (1994)).

In Tachibana, this court held that in order to protect the defendant's constitutional right to testify in his or her own defense, "trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify." 79 Hawai'i at 236, 900 P.2d at 1303.

In reaching this holding, the Tachibana court acknowledged that there were other approaches to the defendant's waiver of the right to testify. Id. at 233, 900 P.2d at 1300. In particular, the court rejected the "demand" approach, where "a defendant who fails to complain about the right to testify during trial is conclusively presumed to have waived that right." Id. The court recognized that such an approach ignored the "basic realit[y]" that "[m]any defendants are unaware that they have a constitutional right to testify" and are incapable of asserting it. Id. at 233-34, 900 P.2d at 1300-01 (quotation marks and citation omitted).

The court ultimately adopted the colloquy approach as it would "best protect defendants' rights while maintaining the

integrity of the criminal justice system."  Id. at 234, 900 P.2d at 1301.  Essentially, the court adopted the colloquy approach because it recognized that the "basic values of personal dignity and fairness are enhanced when the defendant is presented with an opportunity to choose among relevant alternatives."  Id. at 235, 900 P.2d 1302 (quoting United States v. Martinez, 883 F.2d 750, 766-67 (9th Cir. 1989) (Reinhardt, J., dissenting)).

This basic principle of informed choice also underlay this court's decision in State v. Ibuos, where the court held that the trial court has a constitutional duty to inform the defendant of the right to trial by jury in order to ensure a knowing and voluntary waiver of that right.  75 Haw. 118, 120, 857 P.2d 576, 577 (1993).

Similarly, trial courts should endeavor to advise the defendant of the legal consequences of a courtroom departure, where the defendant announces an intention to leave and the trial court has the opportunity to address the defendant regarding this intention.  The defendant's right to be present at trial is "one of the most basic rights guaranteed by the Confrontation Clause[.]"  Cruz v. Commonwealth, 482 S.E.2d 880, 883 (Va. Ct. App. 1997) (internal citation omitted).  As such, it "must be carefully safeguarded."  Id.  The simple practice of the trial judge identifying the constitutional rights that will be lost by

leaving the courtroom would ensure that the defendant makes an informed, personal choice to leave.

3.

Other state courts, in recognition of the significance of the defendant's departure from the courtroom, have required that in order for a defendant who is present in the courtroom to validly waive the right to be present at trial, the trial court must first engage the defendant in a colloquy.

In Commonwealth v. Vega, 719 A.2d 227 (Pa. 1998), the defendant was present in the courtroom for a pre-trial conference when he became frustrated with the court's refusal to appoint him new counsel, and he told the court, "You can have a trial without me," "I don't have to be here for nothing like this," and "You guys do whatever you want without me." Id. at 228-29. The trial court responded, "Yes, you don't have to be present, sir. So you are excused from the trial of this case." Id. at 229.

On appeal, the Vega court held that the defendant's "purported waiver" of his right to be present was ineffective because the trial court "conducted no colloquy to advise [the defendant] of the consequences of waiving his right to be present during his trial, particularly those rights which the [defendant]

35

would forfeit . . . ."[27]  Id. at 231.  The court explained that while it would not require any "rote dialogue . . . or mandate any specific language," the trial court's "inquiry must be calculated to insure a defendant is aware of the dangers and disadvantages of waiving his right to be present during trial."  Id. (footnote omitted).  This requirement has been interpreted to apply only to situations involving "a defendant who is present in court to expressly waive his right to remain for the proceedings . . . ."  Commonwealth v. Hill, 737 A.2d 255, 262 n.15 (Pa. Super. 1999).

The South Dakota Supreme Court found that the defendant's express waiver of his right to be present at trial was knowing and voluntary where the record was "replete with lengthy discourse from the defendant about his concern with his lawyer, the system, and his right to a fair trial," he was "clearly able to articulate his concerns to the trial court and understand his rights," and the trial court informed him, "You have a right to participate in this trial . . . you have a right to confront and cross-examine witnesses, that means you have a right to be here, you have a right to have a trial . . . ."  State v. Talarico, 661 N.W.2d 11, 19-20 (S.D. 2003).  The

_____

[27]  The defendant challenged the validity of his waiver of the right to be present under the Sixth Amendment of the United States Constitution.  Vega, 719 A.2d at 229-30.

defendant repeatedly responded "It's not going to work" and indicated on the record that he was leaving voluntarily. Id.

As stated, the purpose of conducting a colloquy is to ensure that the defendant is making an informed choice to be absent from trial. Vega, 719 A.2d at 230. While the defendants in the cases cited were being held in custody at the time of their trial, the rationale for the colloquy, to ensure that a defendant is making an informed choice to be absent from trial, is applicable to all defendants.

4.

We recognize, however, that Rule 43(b)(1) provides that a defendant's voluntary absence after trial has commenced operates as an effective waiver of the right to be present, "whether or not the defendant has been informed by the court of the obligation to remain during the trial." See State v. Caraballo, 62 Haw. 309, 323, 615 P.2d 91, 100 (1980) ("where defendant has voluntarily absented himself after the trial has begun, this operates as a waiver of his right to be present and the trial may continue as if he were present"). Nevertheless, when a trial court is informed of a defendant's intention to depart from the courtroom, it should seek to advise the defendant of the constitutional rights the defendant will be giving up by not being present during the proceeding.

37

Of course, the court's ability to inform the defendant will vary depending on the circumstance.[28]  A non-custodial defendant may leave the courtroom either without verbalizing an intention to leave or before the court has the opportunity to inform the defendant of the constitutional rights that will be lost.  But when the trial court is aware of the defendant's intention to leave the courtroom and has the opportunity to advise the defendant, the court should inform the defendant of the constitutional rights that will be forfeited by leaving the courtroom.  This procedure builds upon the principles of informed choice and fairness and is supported by a number of weighty considerations.

First, the defendant may not understand the full panoply of rights that will be relinquished by leaving the courtroom.  See Tachibana v. State, 79 Hawaiʻi 226, 234, 900 P.2d 1293, 1301 (1995) ("Many defendants are unaware that they have a constitutional right to testify which no one, not even their lawyer, may take away from them") (internal quotation marks and citations omitted); State v. Eli, 126 Hawaiʻi 510, 523, 273 P.3d 1196, 1209 (2012) (defendant could not have validly waived Miranda right to remain silent when defendant was not informed

_____

[28]  A defendant's behavior in certain circumstances may prevent the court from having the opportunity to adequately inform the defendant of the constitutional rights that will be lost upon the defendant's departure from the courtroom.

"of the consequences of his waiving his right to remain silent and the entire panoply of rights such a commitment [to give a statement to the police] involved").

A defendant who expresses an intention to not testify and a defendant who states an intention to leave are similarly situated. In both circumstances the defendant is present in the courtroom and indicating an intention to waive a fundamental constitutional right. Defendants who decide not to exercise their right to testify are required to be advised by the trial court of the nature of the right and the consequences of waiver. In a similar vein, defendants who indicate their intent to not exercise their right to be present at trial by expressing their intention to leave the courtroom should be informed of the constitutional rights that will be lost upon leaving the courtroom.

Second, informing the defendant of the full nature of the rights that will be lost conveys to the defendant the gravity of the consequences of a departure from the courtroom and the severe disadvantages incurred by the absent defendant. An advisory will prevent the court from unintentionally conveying the message that the court is indifferent to the defendant's presence at trial. Instead, a formal advisory would communicate the importance of the defendant's presence at trial and ensure

39

that the defendant makes a deliberate, informed choice to not be present.

Third, the burden imposed on trial courts to undertake the formal advisory is relatively minimal compared to the significant interests served in safeguarding the defendant's constitutional right to be present at trial. Cf. State v. Chow, 77 Hawaiʻi 241, 247, 883 P.2d 663, 669 (App. 1994) (requiring the trial court to make direct inquiry of the defendant's wish to address the court before sentence is imposed places a "limited burden on the trial court [that] is outweighed by the beneficient policies served by the procedure").

Finally, society generally abhors a criminal trial *in abstentia*. At common law, the defendant's right of presence was considered unwaivable in felony cases because of "the notion that a fair trial could take place only if the jurors met the defendant face-to-face and only if those testifying against the defendant did so in his presence." Crosby v. United States, 506 U.S. 255, 259 (1993). "Our system of justice functions best when the accused is present throughout trial. Defendants are able to communicate with counsel, participate in trial strategy, assist in presenting a defense, and aid with cross-examination." State v. Luna, 936 A.2d 957, 961 (N.J. 2007). In this sense, "a defendant's presence promotes public confidence in our courts as

instruments of justice and helps insure the integrity of a trial's outcome." Id. (internal citation omitted).

At the time the defendant's intention to leave is expressed, it cannot be certain that the defendant will actually follow through with the stated intention. Such a defendant has voluntarily appeared at court, presumably with the initial purpose of being present during the court proceedings. A colloquy that informs the defendant of the constitutional rights that will be waived by leaving may have the salutary effect of persuading the defendant to remain.[29] In addition, engaging the defendant in a colloquy may disclose to the court an underlying reason why the defendant does not wish to be present,[30] allowing that issue to be addressed and neutralizing the defendant's intention to leave, or at the least, providing the trial court with additional information.[31]

Accordingly, in light of these substantial considerations, trial courts should advise the defendant of the

---

[29] There is no indication in the record of Kaulia departing from the courtroom during any of the court proceedings prior, or subsequent, to trial.

[30] In the cases cited, the defendants wanted to leave the courtroom because they were dissatisfied with their court-appointed counsel. Commonwealth v. Faulk, 928 A.2d 1061, 1067 (Pa. Super. 2007); Commonwealth v. Vega, 719 A.2d 227, 228-29 (Pa. 1998); State v. Talarico, 661 N.W.2d 11, 16 (S.D. 2003).

[31] HRPP Rule 43 does not require trial courts to proceed with trial when the defendant is voluntarily absent.

constitutional rights that will be lost upon exiting the courtroom, where the defendant has expressed an intention to be absent from the proceedings and the court has the opportunity to address the defendant.[32]  Ultimately, by engaging the defendant in this manner, the trial court seeks to ensure that the defendant makes an informed decision to not be present.

IV.

The Double Jeopardy Clause bars retrial of a defendant where reversal is based on the insufficiency of the evidence. State v. Silver, 125 Hawaiʻi 1, 9, 249 P.3d 1141, 1149 (2011). Thus we also address Kaulia's sufficiency of evidence claim. State v. Tucker, 10 Haw. App. 73, 96, 861 P.2d 37, 49 (1993).

Kaulia maintains that there was insufficient evidence to negate his claim of self-defense.  "In reviewing the legal sufficiency of the evidence on appeal, . . . the test is whether, viewing the evidence in the light most favorable to the State, substantial evidence exists to support the conclusion of the trier of fact."  State v. Lubong, 77 Hawaiʻi 429, 432, 886 P.2d 766, 769 (App. 1994).  "Substantial evidence" is evidence of "sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion."  Id.

_____

[32]  We reiterate that a defendant's conduct in certain circumstances may prevent the trial court from informing the defendant of the constitutional rights that will be lost upon exiting the courtroom.  See supra note 28.

Substantial evidence was presented at trial to negate Kaulia's claim of self-defense.  The complainant testified that Kaulia "shoved" him first, and Kaulia "kept holding his fist up to me."  The complainant also testified that Kaulia attempted to punch him first but missed, and that Kaulia "backhanded" Masi in the mouth.  This testimony was undisputed.  Therefore, sufficient evidence was presented to enable a reasonable person to conclude that Kaulia's actions were not justified by self-defense.

V.

For the foregoing reasons, the ICA's August 10, 2012 judgment and the district court's January 18, 2011 judgment are vacated.  This case is remanded for a new trial consistent with this opinion.

|  |  |
|---|---|
| Alen M. Kaneshiro<br>for petitioner | /s/ Mark E. Recktenwald |
|  | /s/ Paula A. Nakayama |
| Linda L. Walton<br>for respondent | /s/ Simeon R. Acoba, Jr. |
|  | /s/ Sabrina S. McKenna |
|  | /s/ Richard W. Pollack |

