Filed 7/13/15  P. v. Carby CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>DEVON CARBY,<br><br>        Defendant and Appellant. | D065679<br><br><br>(Super. Ct. No. SCD250665) |

APPEAL from a judgment of the Superior Court of San Diego County, Charles R. Gill, Howard H. Shore, and Timothy Walsh, Judges.  Affirmed.

Jeanine G. Strong, by appointment of the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Eric A. Swenson, Supervising Deputy Attorney General, Lynne G. McGinnis and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

After pleading guilty to robbery and attempted robbery, Devon Carby filed a motion to withdraw his guilty plea based on his claim that he was under the influence of

drugs when he pled guilty. He argues the trial court should have permitted him to withdraw his plea because at the change of plea hearing the court failed to inquire about his drug use and impairment, and the record shows he was impaired when he entered the guilty plea.

We hold the court did not err in denying the plea withdrawal motion, and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Change of Plea Hearing*

In September 2013 defendant was charged with eight offenses arising from allegations that on March 11, 2013, he committed attempted robbery, and that on March 12, 13, and 16, 2013, he (along with four codefendants) engaged in two incidents involving a conspiracy, attempted robbery, grand theft, burglary, and robbery.[1] On December 13, 2013, defendant agreed to plead guilty to one count of attempted robbery and one count of robbery, with an agreement that the remaining charges would be dismissed and he would receive a sentence of two years eight months. Defendant's four codefendants also reached plea agreements.

On his guilty plea form, defendant initialed the box for the statement providing, "*I am entering my plea freely and voluntarily*, without fear or threat to me or anyone closely related to me." (Italics added.) However, he did *not* initial the box for the statement

---

[1] For purposes of resolving defendant's challenge to the denial of his plea withdrawal motion, we need not detail the facts underlying these charges.

2

providing, "*I am sober and my judgment is not impaired. I have not consumed any drug, alcohol or narcotic within the past 24 hours*." (Italics added.)

At the change of plea hearing, the court (Judge Howard Shore) queried defendant and the four codefendants about their plea agreements. The court asked each of them if they had signed and initialed the guilty plea form; if they wished to give up the various constitutional rights; if they understood the maximum possible punishment and the consequences of the plea; and if they understood the charges to which they were pleading and the sentencing agreement. Defendant answered affirmatively to each of the questions. When the court asked each of them if they had any questions about the maximum punishment or the consequences of the plea, defendant answered "No." The trial court also asked, "*Are each of you pleading guilty freely and voluntarily*? [¶] Mr. Carby?" (Italics added.) Defendant answered, "Yes." The court asked each of the other four defendants to respond to this question, and they each answered yes. The court then asked the defense attorneys if they had enough time to review the forms with their clients and were satisfied the client understood the nature of the charges and consequences of the plea and the constitutional rights being waived. Defendant's counsel, as well as the other four counsel, answered affirmatively.

When reviewing the factual bases for the pleas, the court set forth the facts pertaining to defendant's offenses, and then asked defendant, "Are those the facts on which your guilty plea is based, Mr. Carby?" Defendant responded, "I'm not sure. I guess." The court stated he needed to "be sure"; asked if he wanted to "think about it"; and reiterated that he was pleading guilty to attempted robbery and to robbery which

3

meant "an attempt to take property by force or fear" and "taking of property from someone's immediate presence by force or fear." Defendant again said, "I guess so," and the court told him the question required a "yes" or a "no" answer. Defendant then said, "Yes."

After completing this process with the four codefendants, the court then turned to the specific charges to which the defendants were pleading. The court asked defendant whether he pled guilty or not guilty to the attempted robbery charge, and defendant responded, "Not guilty." The court queried, "You sure?" and defendant answered, "Yes." The court then reminded defendant that he was "being given a deal for two years, eight months" whereas he was facing 16 years eight months if he was convicted of the charges, and stated "I want to make sure you understand that. I personally don't care. I don't work on commission. If I'm not doing this case, I'll be doing something else. You're the one who has to decide between two years and 16 years." Defendant then responded, "Guilty." Then court then asked defendant if he was pleading guilty or not guilty to the robbery charge, and defendant said, "Guilty." The court questioned the remaining four defendants about the particular charges to which they were pleading. At the conclusion of the court's questioning, the prosecutor requested that the court ask each defendant if they were knowingly, intelligently, and voluntarily entering their plea. The court responded that its questions were for the purpose of making that determination; this statement is included on the guilty plea form; and it found the defendants' waivers were knowing, intelligent and voluntary.

4

*Motion To Withdraw the Guilty Plea*

On January 13, 2014, the date set for sentencing, defendant informed the court he wanted to withdraw his guilty plea. The court ordered the appointment of new counsel, and set the matter for hearing. In his plea withdrawal motion filed on February 26, 2014, defendant claimed that on the day of his plea a jail inmate gave him a "morphine pill"; he took the pill to "calm [himself] down"; he was "under the influence of that medicine in court that morning"; and he did not "fully understand the proceedings or enter his plea knowingly."

With defendant's agreement, the plea withdrawal motion was heard by a different judge (Judge Charles Gill) than the judge who presided over the change of plea hearing (due to the latter's unavailability). At the hearing on March 12, 2014, the court reviewed the change of plea form and the transcript of the change of plea hearing, and heard testimony from defendant and from the attorney (Dennis Lainez) who represented defendant when he entered his plea.

*Attorney Lainez's Testimony*

Attorney Lainez testified that on the morning defendant changed his plea, the case was set for a preliminary hearing before Judge Timothy Walsh at about 8:15 a.m. That morning the other four defendants had indicated they wanted to plead guilty. While in Judge Walsh's department, for about 30 minutes Attorney Lainez moved back and forth between defendant, the prosecutor, and defendant's family discussing a new plea offer the prosecution had made that morning. When on the record, Judge Walsh advised defendant of the maximum penalty he would face if he declined the prosecution's offer.

At about 9:45 or 10:00 a.m., defendant decided he wanted a preliminary hearing and the case was moved to Judge Shore's department. Attorney Lainez again spoke with defendant in Judge Shore's department, and at this point defendant was "waffling back and forth" on whether to take the plea offer or proceed with the preliminary hearing. Lainez explained that defendant was "frustrated by the way things were turning out" because he felt he was being treated unfairly compared to the other defendants in that the others were getting more lenient dispositions. While they were in Judge Shore's department, the deputy district attorney met with defendant and Lainez, discussed the maximum penalties, and asked defendant to consider his family in making his decision about what he wanted to do.

Once defendant decided to accept the plea offer, Attorney Lainez reviewed the change of plea form with him and asked him to initial the boxes. Defendant appeared to understand and follow along with what he was saying, and defendant signed the plea form. Attorney Lainez testified it was his custom to have his clients initial each relevant box, and he acknowledged he should have paid attention to the box on defendant's form that addressed drug consumption and impairment. Defendant entered his guilty plea at about 11:19 a.m., which was about three hours after his court proceedings had commenced that morning.

Attorney Lainez testified that while they were in Judge Shore's department, defendant told him that he had taken some medication. When Attorney Lainez queried him further about this, defendant said he had taken one "dilantin" pill. Lainez ascertained the medication was not given to him by the jail and thus there would be no

6

documentation to confirm this. Lainez might have informed the deputy district attorney about defendant's claim that he had taken the medication, and he may also have told the court clerk, although he was not sure.

Attorney Lainez testified he pays attention to whether his clients are under the influence when considering a change of plea, and he observes whether there are any differences or "real drastic change[s]" from other interactions. Defendant's demeanor on the morning that he changed his plea seemed consistent with his demeanor on other occasions. Lainez stated "there was nothing about [defendant] on that particular day that made [Lainez] concerned about his competency," and it did not appear that defendant was under the influence of any medication. Lainez elaborated that if he had felt defendant did not understand "what was going on" or if he thought "there was anything other than just a delaying tactic," he would have either asked for a continuance or declared defendant's incompetency, and it was not his "practice to make people plead guilty when they are under the influence."

Lainez did not recall defendant telling Judge Shore that he took a morphine pill or that he was under the influence, and he did not observe any interactions between Judge Shore and defendant that caused him concern that defendant was possibly under the influence to the point that he did not know what he was doing. He recalled defendant talking about how unfair he thought the plea offer was and he did not want to go forward with it, and Judge Shore told him, " 'You don't have to take it,' " and then ultimately defendant accepted the plea offer.

7

Attorney Lainez acknowledged that on the morning of his guilty plea, defendant seemed "nervous and anxious." Lainez explained that defendant could not understand why the other defendants were being treated more leniently, and Lainez's explanations to him about his "level of involvement" and "previous convictions" did not seem to make a difference. Lainez testified that although defendant may have been confused about the way he was being treated as compared to the other defendants, he did not seem confused about the proceedings or "what was going on."

*Defendant's Testimony*

At the plea withdrawal hearing, defendant was questioned at some length about his recollections of the proceedings on the morning he entered his guilty plea. Defendant recalled being in the two courtrooms that morning, first with Judge Walsh and then with Judge Shore. He remembered Judge Walsh talking to him about whether he wanted to go forward with the preliminary hearing or plead guilty, and discussing his maximum exposure if he did not plead guilty. Defendant testified that Judge Walsh told him he could talk to his attorney again for a few minutes, and his attorney "just told me I better sign."

Defendant remembered that when they were in the second courtroom, the deputy district attorney sat down with him and his attorney and told him what his maximum penalty would be. According to defendant, the deputy district attorney stated, "she didn't want to give me max because my family was there and I should . . . sign the plea." Defendant testified his attorney told him to sign the guilty plea form; he initialed boxes

8

on the form; and he had no recollection concerning his failure to initial the box concerning drug use and impairment.

Defendant recalled that in the second courtroom Judge Shore asked him questions when reviewing the change of plea form. When asked if he recalled Judge Shore reading about the various constitutional rights he was giving up, defendant responded, "Everything was going so fast, I don't remember all of those words."

When queried about his drug use that morning, defendant stated he took the morphine pill about one hour before he went to court; he took it to "calm [his] nerves"; and the pill made him feel "more high than anything." He testified he told Attorney Lainez that he took a pill and that he "was not in the right state of mind at the time," and Lainez responded that he "was lying" and he needed "to go forward with this." Attorney Lainez also talked to defendant's family, and Lainez then relayed a message to him that his family said he "should take the plea bargain." Defendant testified he was "more under duress than anything"; he was under the influence of morphine; and he was not certain that day whether or not he wanted to plead guilty.

Defendant claimed he also told the deputy district attorney that he had taken a morphine pill, but acknowledged he did not say anything to either Judge Walsh or Judge Shore about this.

*Trial Court's Denial of Plea Withdrawal Motion*

Defense counsel argued that under the totality of circumstances the court should grant the plea withdrawal motion. Counsel stated it was likely defendant ingested narcotics; the box on the guilty plea form addressing drug use and impairment was not

9

initialed; defendant told his attorney about his drug ingestion and his attorney may have alerted the prosecutor; this concern was not brought forward and acknowledged at the time of his guilty plea; and particularly in a multi-defendant situation a defendant can be pressured and confused and not have the volition to enter a guilty plea.

In opposition, the prosecutor argued defendant's statements and behavior during the proceedings on the morning he entered his plea, including his initial decision to reject the plea offer and have a preliminary hearing, indicated he was aware of the consequences he faced and was exercising judgment. Further, when he changed his mind and decided to take the plea offer, he again exercised his judgment; he did not tell the judge he was under the influence; he answered the judge's questions; the judge discussed the plea form with him; and the judge found he knowingly and voluntarily entered his plea.

The trial court ruled defendant had not shown he was incapacitated to the extent that he could not make a knowing, intelligent, and voluntary waiver of his constitutional rights and plead guilty. The court stated that it could "appreciate and understand" that the box concerning drug use and impairment was not initialed, and that there was no direct questioning during the change of plea hearing regarding the ingestion of drugs. However, the court found defendant's testimony during the current plea withdrawal hearing lacked credibility and Attorney Lainez's testimony was credible.

The court stated the mere fact defendant may have ingested the medication did not show good cause for plea withdrawal; rather, the question was whether he was so impaired that he could not make a knowing and voluntary waiver of his rights. The court

10

found that even if he took the medication, the evidence did not show he did not make a knowing, intelligent, and voluntary waiver.

## DISCUSSION

Defendant argues the trial court abused its discretion in denying his plea withdrawal motion because the evidence showed that at the time he pled guilty he was under the influence of the morphine, and at his change of plea hearing the trial court failed to make an adequate inquiry concerning this matter.

### *Governing Law*

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary." (*People v. Cross* (2015) 61 Cal.4th 164, 170.) The trial court should "cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made . . . ." (Pen. Code, § 1192.5; *People v. Palmer* (2013) 58 Cal.4th 110, 112.) "The purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." (*Godinez v. Moran* (1993) 509 U.S. 389, 401, fn. 12, italics omitted.)

A defendant seeking to withdraw a guilty plea must show there were circumstances overcoming his or her exercise of free judgment. (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 917; Pen. Code, § 1018.) A defendant's ingestion of drugs does not alone show a plea is involuntary; rather, "there must be some evidence that the medication [has] affected his rationality." (*Carey v. United States* (1st Cir. 1995) 50 F.3d 1097, 1099; *Oliver v. State* (Utah 2006) 147 P.3d 410, 412.) When evaluating the

11

voluntariness of a plea, a trial court is not required in every case to inquire about drug or alcohol use. (*Carey, supra*, 50 F.3d at p. 1099 [court not required to make inquiry regarding drug use where there was no suggestion "defendant was not in complete command of his faculties"].) However, when a trial court is informed the defendant has recently ingested a substance capable of impairing the ability to make knowing and voluntary decisions, the trial court should question the defendant " 'with a view to assessing the impact of the ingested substances on the defendant's capacity to understand the change-of-plea process and intelligently determine a proper course of action.' " (*Ibid.*)

Deficiencies in the trial court's inquiries at the time the plea was entered do not mandate plea withdrawal if the record affirmatively shows a knowing and voluntary plea. (See *People v. Cross, supra*, 61 Cal.4th at pp. 171, 179.) A trial court may properly decline a plea withdrawal motion based on a claim of drug ingestion if the evidence shows the defendant "was not impaired to the point that his independent judgment was overcome at the time he entered the guilty plea." (*People v. Ravaux, supra*, 142 Cal.App.4th at p. 918.) On the other hand, a defendant is entitled to withdraw his plea if " 'he proved that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea.' " (*Oliver v. State, supra*, 147 P.3d at p. 413.)

On appeal from the denial of a plea withdrawal motion, we defer to the trial court's credibility resolutions and factual findings if supported by substantial evidence. (*People*

*v. Fairbank* (1997) 16 Cal.4th 1223, 1254; *People v. Ravaux, supra*, 142 Cal.App.4th at pp. 917-918.)  The relevant inquiry is "whether the defendant's [guilty plea] was intelligent and voluntary in light of the totality of the circumstances."  (*People v. Mosby* (2004) 33 Cal.4th 353, 361.)

*Analysis*

Assuming defendant ingested a morphine pill on the morning he pled guilty, the record nevertheless shows that he knowingly and voluntarily participated in the proceedings and exercised judgment about pleading guilty.  The attorney who represented defendant on the morning of his guilty plea (Attorney Lainez) had previous contact with him and was familiar with his demeanor; Lainez interacted with him for a three-hour period during the morning of his plea; and Lainez observed no signs that he was under the influence or having difficulty comprehending what was occurring.  The trial court at the plea withdrawal hearing credited Lainez's testimony on this point, and we defer to this credibility finding.

Further, when defendant testified at the plea withdrawal hearing, he acknowledged his understanding of numerous matters relevant to the proceedings on the morning that he entered his plea.  He remembered that he appeared before two different judges (Judges Walsh and Shore); they were discussing whether he wanted to go forward with the preliminary hearing or accept the plea offer; and Judge Walsh and the deputy district attorney discussed with him the maximum exposure he would face if he did not accept the plea offer.  Defendant recalled that his attorney told him that he should sign and communicated a message from his family that he should accept the plea offer.  This

13

testimony reflects that his rational faculties were functioning during the proceedings when the plea bargain was being discussed; i.e., he understood he could go forward with a preliminary hearing and did not need to plead guilty; he faced a potentially longer sentence if he did not accept the plea offer; and even though other people wanted him to accept the plea offer (i.e., his attorney and family) it was his choice. Also, Attorney Lainez described how defendant first elected to have a preliminary hearing and then changed his mind, and explained that defendant was not certain he wanted to take the plea because he felt he was being treated unfairly as compared to the other defendants. These demonstrations of defendant's cognitive processing support the trial court's findings that defendant's claim of mental impairment at the time he changed his plea was not credible, whereas Lainez's observations of mental awareness were credible.

Certainly it would have been preferable for the court at the change of plea hearing to have asked defendant why he did not initial the box concerning drug consumption and impairment. However, any deficiency in this regard was harmless beyond a reasonable doubt. As set forth above, the totality of the circumstances shows defendant participated in a rational manner in the proceedings on the morning he changed his plea, including first exercising his right to have a preliminary hearing and then upon further discussion changing his mind; expressing his concerns about his codefendants' receipt of more lenient sentences; and listening to the advisements concerning his maximum exposure should he reject the plea offer. At the plea withdrawal hearing, his counsel affirmatively described how he saw no problems with defendant's demeanor or mental functioning during the three-hour period, and defendant's own testimony at the plea withdrawal

14

hearing reflected his awareness of what occurred during the proceedings on the morning he entered his plea.

In support of his claim that he should be permitted to withdraw his plea, defendant points to the instances during the change of plea hearing when he failed to answer the court's questions in a straightforward manner; for example, when he first said "I'm not sure," "I guess" when asked about the factual basis for his plea, and when he first said "Not guilty" when asked how he was pleading to one of the charges. Under the totality of circumstances, these responses suggest defendant's ongoing ambivalence and reluctance to plead guilty, but they do not rise to the level of showing he was unaware or confused about the proceedings so as to affect the knowing and voluntary nature of his plea. (See *People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208-1209 [reluctance or vacillation does not alone show involuntary plea].) Ultimately, defendant answered these questions in a clear manner. Considering the overall active nature of defendant's participation in the change of plea proceedings and the contents of his testimony at the plea withdrawal hearing, the record reflects he understood what was occurring and could exercise judgment.[2]

---

[2]    Defendant also points to the fact that during the change of plea hearing the court asked him if his maximum exposure under the plea agreement was "58 months" and defendant responded "Yes," whereas in fact the maximum exposure was five years eight months. The guilty plea form erroneously stated "58 months," and after defense counsel pointed out this clerical error at the change of plea hearing, the trial court corrected it, again queried defendant, and defendant again answered "Yes." Defendant's affirmative response concerning the "58 months" does not alone reflect he was impaired when considering all the other evidence showing he was mentally aware.

Defendant also notes that at the conclusion of the change of plea hearing when the prosecutor requested that the court ask each defendant if he was entering his plea knowingly and voluntarily, the court declined to do so. This does not show error. The trial court made this precise inquiry at the commencement of the change of plea hearing, and defendant answered affirmatively.

The court did not err in denying defendant's plea withdrawal motion.

## DISPOSITION

The judgment is affirmed.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.

16